NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-964

COMMONWEALTH

vs.

LOVANT WHEELER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from a Superior Court judge's order allowing the defendant's motion to suppress evidence discovered during the warrantless search of a car following a traffic stop.  The judge found that the search of the car was unconstitutional because it immediately followed an illegal seizure of the defendant and the defendant's subsequent consent to search was not freely and voluntarily given.  We affirm.

Background.  We summarize the judge's findings, following an evidentiary hearing, supplemented by our independent observations of the video evidence from the officers' body-worn cameras (BWCs).  See Commonwealth v. Yusuf, 488 Mass. 379, 381-382 (2021).  See also Commonwealth v. Prater, 420 Mass. 569, 578

n.7 (1995) ("we are in the same position as the [motion] judge in viewing the videotape").

In March 2024, Boston police Officer Sean Burke was on patrol with two other officers in a police cruiser in a South Boston neighborhood. At around 8:30 P.M., they observed a car drive through a stop sign without slowing down or stopping. Officer Burke activated the police cruiser's lights, made a U-turn, and executed a traffic stop.

Another officer ran a Criminal Justice Information System query on the car's license plate and found that it was registered to the defendant, who lived in that neighborhood. Officer Burke was familiar with the defendant. They had interacted four or five times over the past four years that Burke had been assigned to that police district. Officer Burke knew that the defendant had a prior conviction for illegal possession of a firearm, but at the time of the stop he could not remember exactly how long ago that conviction had occurred. He testified that he knew it was at least four years prior to the stop.[1]

The defendant pulled over quickly and without any issues. After the defendant stopped, he immediately got out of the car

---

[1] At the suppression hearing, Office Burke testified that he had since learned that the defendant's firearm conviction had occurred in 2014, ten years before this traffic stop.

and stood at the driver's side with the driver's door open behind him. Officer Burke testified that this behavior was "very, very rare," and that it caused the officers to have safety concerns.

All three of the officers got out of their car and approached the defendant simultaneously. They were in plain clothes and were armed. As they approached, the defendant appeared nervous, frustrated, and animated. Officer Burke asked the defendant for his driver's license and registration, and the defendant confirmed that he had both documents. The defendant then leaned toward the interior of his car. Officer Burke blocked the defendant from accessing the interior by putting his right arm between the defendant and the open door. The defendant then put both hands in the air as the officers surrounded him. Officer Burke stood between the defendant and the car while a second officer approached from the other side, immediately grabbed the defendant's right arm, and pulled it backwards. The third officer stood behind the defendant.

As the Commonwealth conceded at oral argument, the officers did not have reasonable suspicion to believe that the defendant was armed and dangerous as they approached him. Nevertheless, immediately after his partner pulled the defendant's arm backwards, Officer Burke pat frisked the defendant's front sweatshirt pocket. After Officer Burke touched the defendant,

3

but before he had reached inside the sweatshirt pocket, the defendant said, "You could pop, lemme, look, I'mma pop everything, you can search everything."  Officer Burke proceeded with the patfrisk, telling the defendant multiple times that the police did not want to search the car, and to relax.  The defendant offered again to open the trunk of his car and allow officers to search it.  The officers again declined, reiterating to the defendant that they were not interested in searching his car.  Officer Burke completed his patfrisk, finding no weapons or contraband on the defendant's person.

Officer Burke then searched the car.  He opened multiple small, closed containers within the center console area, and eventually found suspected narcotics inside one of these containers.  The officers then arrested the defendant.

After an evidentiary hearing, the judge found that the initial patfrisk was not supported by reasonable suspicion, and that the defendant had not given valid consent to search the vehicle, because the "search everything" statement (statement) was made in immediate response to an illegal search and seizure.

Discussion.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations and citation omitted).  Commonwealth v. Jones-Pannell, 472 Mass. 429, 431

4

(2015).  "The Commonwealth bears the burden of demonstrating that the actions of the police officers . . . were within constitutional limits."  Commonwealth v. Gomes, 453 Mass. 506, 509 (2009).

1.  Seizure.  On appeal, the Commonwealth concedes that Officer Burke's patfrisk was illegal, acknowledging that it was not supported by reasonable suspicion that the defendant was armed and dangerous.[2]  Instead, the Commonwealth argues that the judge erred by finding that the defendant made the statement at the same time that Officer Burke began the illegal patfrisk.  The Commonwealth suggests that because the defendant made the statement before Officer Burke ever placed his hands on him, his initial consent to search the vehicle was not a product of police coercion.  We are not persuaded.

In fact, the defendant had already been seized, for constitutional purposes, before he consented to a search of his car and before the illegal patfrisk began.  A person is seized for purposes of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights when, "in light of the surrounding circumstances, a reasonable person in the situation would not feel free to

---

[2] This concession establishes that the seizure of cash from the defendant's pocket during the patfrisk was illegal.

5

leave." Gomes, 453 Mass. at 510. "The pertinent inquiry is whether 'an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce that person to stay.'" Commonwealth v. Daveiga, 489 Mass. 342, 347 (2022), quoting Commonwealth v. Matta, 483 Mass. 357, 362 (2019).

After careful review of the BWC footage, we conclude that the officers seized the defendant before he told them they could "search everything," and prior to the patfrisk. To be sure, the initial traffic stop was reasonable because the officers had personally witnessed the defendant committing a traffic violation. See Commonwealth v. Santana, 420 Mass. 205, 207 (1995). But after the defendant got out of the car, three armed police officers approached and surrounded him, blocking any path of egress. One officer then grabbed the defendant's right arm and pulled it backwards, in an apparent attempt to move him away from the car. "[W]here [a] police officer's conduct impeded the defendant's freedom of movement, he was seized for constitutional purposes." Commonwealth v. Meneus, 476 Mass 231, 235 (2017).

2. Lack of justification. A seizure must be supported by an officer's "reasonable suspicion that the person seized has committed, is committing, or is about to commit a crime." Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007). The fact

6

that the defendant got out of the car and appeared nervous and frustrated was insufficient to justify "enlarging a routine traffic stop into an investigation."  See Commonwealth v. Gonsalves, 429 Mass. 658, 660 (1999) (defendant's "extremely nervous" behavior did not establish reasonable suspicion); Commonwealth v. Torres, 424 Mass. 153, 159 (1997) (getting out of vehicle after traffic stop is "not unnatural" and does not alone support extension of traffic stop into more serious inquiry).  Accordingly, the initial seizure was not supported by a reasonable suspicion that the defendant "has committed, is committing, or is about to commit a crime," DePeiza, supra, and therefore was illegal.

3.  Consent to search vehicle.  Warrantless searches "are per se unreasonable [under both the Fourth Amendment and art. 14] -- subject to only a few . . . exceptions" (citation omitted).  Commonwealth v. Cast, 407 Mass. 891, 901 (1990).  Under the consent exception to the warrant requirement, police may conduct a warrantless search with the free and voluntary consent of a person possessing the ability and apparent authority to consent.  See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Commonwealth v. Ortiz, 422 Mass. 64, 70 (1996).  Whether consent is free and voluntary is determined from all of the surrounding circumstances.  See Commonwealth v. Barnes, 20 Mass. App. Ct. 748, 754 (1985).

7

The Commonwealth argues that the defendant's statement was valid consent justifying the officers' warrantless search of the defendant's car.  We disagree.

The Commonwealth has the burden of proving that the defendant's consent was freely and voluntarily given, rather than "mere acquiescence to a claim of lawful authority" (quotation omitted).  Commonwealth v. Walker, 370 Mass. 548, 555, cert. denied, 429 U.S. 943 (1976), quoting Bumper v. North Carolina, 391 U.S. 543, 548 (1968).  Contrary to the Commonwealth's claim, the BWC footage establishes that the defendant made the statement immediately after three officers had surrounded him, an officer had grabbed his right hand and pulled his arm backwards, and Officer Burke began pat frisking him.[3]

"Where consent is obtained as a result of the exploitation of a prior illegality that follows close in time, then consent is not considered to be freely given."  Commonwealth v. Yehudi Y., 56 Mass. App. Ct. 812, 817 (2002), citing Commonwealth v. Midi, 46 Mass. App. Ct. 591, 595 (1999).  Given that the defendant's statement immediately followed an

---

[3] Again, regardless of whether Officer Burke began the patfrisk before, while, or after the defendant made the statement, the defendant had already been seized at that point when the three officers surrounded him and one officer grabbed his right arm.

8

unconstitutional seizure, it cannot be characterized as free and voluntary consent.

4. <u>Fruit of poisonous tree</u>.  Under the "fruit of the poisonous tree" doctrine, the exclusionary rule bars the use of evidence derived from an unconstitutional search or seizure.  <u>Wong Sun</u> v. <u>United States</u>, 371 U.S. 471, 488 (1963) (defining "fruit of the poisonous tree" as evidence discovered after exploitation of unlawful search or seizure).  See <u>Commonwealth</u> v. <u>Damiano</u>, 444 Mass. 444, 453 (2005).

Because the search of the car followed immediately after an illegal seizure of the defendant, the suspected narcotics that Officer Burke discovered during the search were properly suppressed as the fruit of the poisonous tree.  See <u>Commonwealth</u> v. <u>Loughlin</u>, 385 Mass. 60, 63 (1982).[4]

<u>Order allowing motion to suppress affirmed</u>.

By the Court (Desmond, Tan & Wood, JJ.[5]),

*Paul Little*

Clerk

Entered:  July 8, 2026.

---

[4] Because we find that the police lacked valid consent to search the car, we need not reach the Commonwealth's other arguments regarding the scope and withdrawal of that consent.

[5] The panelists are listed in order of seniority.